## Case No. 14,974.

### UNITED STATES v. DODGE.

[1 Deady, 186.] [1]

District Court, D. Oregon.  Nov. 7, 1866.

INTOXICATING LIQUORS—SALE WITHOUT LICENSE—PROCEEDS OF SALE—PROOFS—CREDIBILITY OF WITNESSES.

1. A sale of spirituous liquors, without a license therefor first obtained, is a violation of section 73 of the act of June 30, 1864 (13 Stat. 249), although the party making such sale intended at the time to give the proceeds thereof to the sanitary commission or other charitable use.

[Cited in State v. Dunbar, 13 Or. 591, 11 Pac. 300.]

2. Reputation is competent proof of the name of a person, place or house; and, therefore, upon the trial of an indictment against one Dodge for selling liquor without license, the government was allowed to prove that the house where the witness bought the liquor was called Dodge's, and that the name of the man who kept it was called Dodge.

3. Power and duty of a jury in judging of the credibility of witnesses, and the value or effect of evidence.

This was an indictment [against Solomon Dodge] found under section 73 of the Act of June 30, 1864 (13 Stat. 249), commonly called the "Internal Revenue Act." It charged the defendant with selling liquor at retail without a license therefor, between July 12 and September 15, 1845, at Yaquinna Bay, in the district of Oregon. The plea was "Not guilty." On the trial, it was admitted that between the dates aforesaid, or since, the defendant was not licensed to retail liquor. From the evidence it appeared that he was

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

the proprietor and occupant of a house in the village of Oysterville, on the waters of Yaquinna Bay, where he was in the habit of entertaining travelers with board and lodging; that he kept spirituous liquors in his house and furnished them to his guests and others, by the drink or bottle, without any direct charge therefor, but that such guests and others at the suggestion of the defendant, deposited the value of such liquor in money in a box kept on the mantelpiece with a hole cut in the lid of it, and called by the defendant "the sanitary box." There was no evidence tending to show that the moneys so deposited were ever in fact applied by the defendant to any use other than his own.

Joseph N. Dolph, for plaintiff.
William M. Strong, for defendant.

DEADY, District Judge (charging jury). The internal revenue act of June 30, 1864, provides: Section 71: "That no person, firm, company or corporation, shall be engaged in, prosecute or carry on any trade, business or profession hereinafter mentioned or described, until he or they shall have obtained a license therefor in the manner hereinafter provided." Section 72 prescribes the mode of obtaining such license, and devolves upon the person requiring it the duty of applying therefor, and furnishing the proper officer the necessary information to enable him to issue the same, and also to pay the tax thereon. Section 73: "That if any person or persons shall exercise or carry on any trade, business, or profession, or do any act hereinafter mentioned, for the exercising, carrying on, or doing of which trade, business or profession, a license is required by this act, without taking out such license, as in that behalf required, he, she, or they shall, for every such offence, besides being liable for the payment of the tax, be subject to imprisonment for a term not exceeding two years, or a fine not exceeding five hundred dollars, or both." Section 73 defines the crime with which the defendant is accused, and prescribes the punishment therefor. It consists in the exercising or carrying on the business of a retail liquor dealer. Section 79 of the act (subdivision 5) defines the business of a retail liquor dealer, as follows: "Every person who shall sell, or offer for sale foreign or domestic spirits * * * in quantities of three gallons or less, * * * shall be regarded as a retail dealer in liquors under this act."

If the evidence satisfies you that the defendant, between the dates charged in the indictment, was engaged in the business of retailing liquor, within the terms of this definition, you should find him guilty, otherwise not. Proof of a single act of selling or offering for sale, is sufficient to constitute the crime, and warrant a conviction. The object of section 73, is to punish persons who do or attempt to defraud the revenue of the United States in this particular, and unless it is honestly and impartially enforced by courts and juries, the government is cheated, and gross injustice is done to all honest people, who pay their taxes fairly and promptly. Proof that the defendant was engaged in the business of a retail liquor dealer, may arise from circumstances, other than a particular instance, of selling or offering to sell. A person is engaged in a business within the meaning of the act, when he has the means to do so at his command, and holds himself out to the world, or the public in that capacity, or is ready or offers to do a particular act, constituting such business. If he should not succeed in securing custom or making sales, this fact is not an excuse for having engaged in the business without a license. The license must be first obtained, and then, and not before, the party is at liberty to sell or offer for sale, liquor in less quantities than three gallons. The liquor may be offered for sale without a special or personal solicitation of any particular person to become a purchaser. It may be done by general advertisements in the press, or by the exhibition of signs or symbols in the vicinity of the place of the alleged business, or by having the article on sale, with intent to dispose of it to any one offering to purchase.

Counsel for the defendant ask the court to instruct you, as a matter of law, that if the money recovered by the defendant for liquor, was honestly intended by him for the use of the sanitary commission, he cannot be convicted. I hardly suppose counsel is in earnest in making this proposition. But be that as it may, I decline to give the instruction. The delivery or furnishing of liquor by the defendant to any one with the intent on his part to obtain and receive a compensation therefor, directly or indirectly, constitutes a violation of section 73 of the act; and any ulterior purpose, whether real or pretended, to bestow the money or compensation so obtained upon any person or object of charity, or otherwise, does not affect the character of the transaction or purge the defendant of the guilt incurred by such unlicensed traffic. As well argue that it is justifiable to cheat or steal generally for the benefit of the sanitary commission. The old maxim applies—"Be just before you are generous." However, upon the facts known to the court, this "sanitary-box" appears to be a mere dishonest device to avoid the payment of the tax, and not a very ingenious one. It is a matter of history that the Confederate army under Lee surrendered to Grant on April 9, 1865. Practically, the Civil War then terminated, and with it the collections for the sanitary commission. Such being the case, judge you if it is not absurd now to claim that the defendant was retailing liquor at the remote and insignificant village of Oysterville, on the coast of Oregon, without a license, in the month of Sep-

tember, 1865, for the benefit of the sick and wounded of the army of the Republic. Besides, before the defendant is excused upon this ground, in common honesty, he ought to show that he has paid over the money made or received to the commission. Nothing of the kind has been attempted, and you are therefore warranted in concluding that this defence is untrue in fact as well as insufficient in law.

A witness has been allowed to testify before you that the house in Oysterville, where he obtained liquor, was on one occasion "called Dodge's." Counsel for the defendant objected to the introduction of this evidence on the ground that it was hearsay. Not satisfied with the ruling of the court, counsel appeals to you in somewhat extravagant terms, to disregard it as incompetent. I suppose you are aware, if counsel is not, that it is the province of the court to decide what evidence is competent and relevant, and not that of the jury. In the heat of argument and from a desire of victory, counsel sometimes make extravagant assertions before juries, for which they are hardly accountable, and to which you should give no heed.

The testimony of the witness has been allowed by the court to be offered to you as competent, and it is your duty so to receive and consider it as such. The house "was called Dodge's," and the man who dealt out the liquor "was called Dodge"—in other words, the house, and the man who kept it, had the reputation in that vicinity of being named Dodge. Reputation or hearsay is competent proof of the name of a person, place or house. But the effect or value of this evidence upon the point in controversy—whether the witness got his liquor from the defendant or at a place under his control—is for you to determine. And so it is with all the evidence in the case. The degree of credit to be given to the testimony of the witnesses, and the inferences, if any, to be made from the facts proven, are matters within your province to determine. Yet your power in this respect is not arbitrary, but must be exercised with legal discretion and in subordination to the rules of evidence. Your oath to decide according to the law and evidence given you in court, obliges you to do this. And it is the duty of the court to make such suggestions to you in this respect as it conceives proper under the circumstances of the case.

It is not contended that any of the witnesses have deliberately stated what is untrue. The presumption of law is that a witness testifies truly, and you are to act upon this presumption until it is overcome by the evidence or circumstances of the case. The witnesses, so far as appears, are persons without any grudge against the defendant, and having no special or personal interest in his conviction. From the fact that it appears they obtained liquor at his house for their

own convenience, they may be reluctant to testify against the defendant, and thus be the means of his being punished for that act. Such feelings are natural, and have their foundation in a generous sentiment, but you should bear in mind that they may lead a witness to, unconsciously or otherwise, state the facts concerning which he is interrogated as favorably for the defendant as he can, without telling a deliberate falsehood. As in this case, a witness upon his examination in chief, may state a fact against the defendant positively, and upon cross-examination, at the suggestion of counsel for defence be very ready to cast doubt upon such statement, by admitting the possibility of his being mistaken in regard to some important circumstances connected therewith. Considering the relation which the witnesses called by the government appear to sustain to the defendant, it is fair to infer that their testimony is as favorable to him as their consciences would permit. Subject to these suggestions and your oaths, you are to judge of the credibility of the witnesses and the value of their evidence, and find accordingly.

The law presumes that the defendant is innocent of the crime charged against him. The burden of proof is upon the government to overcome that presumption, and prove the charge as laid in the indictment beyond a reasonable doubt. A reasonable doubt is not a mere caprice, whim or possibility, but a doubt arising from the circumstances of the case, and founded upon a substantial reason. It is not required that the proof should amount to absolute certainty. Moral certainty is sufficient to authorize a verdict of guilty, and you are not to acquit the defendant because by some possibility or other he may not be guilty. If, upon a careful consideration of all the circumstances of the case, you are satisfied beyond a reasonable doubt that the defendant is guilty as charged in the indictment, you should say so by your verdict, otherwise not.

The jury found the defendant guilty as charged in the indictment. Judgment that the defendant pay a fine of $50, and the costs of the action, taxed at $76.26, and that in default thereof he be committed to the county jail at Multnomah county until the same was discharged, at the rate of one day for every $2 of such fine and costs.